UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Adhid Miri, an individual, The Exchange
Inc., A Michigan corporation d/b/a 'Copper
Canyon" on behalf of themselves and all
other similarly situated persons and entities,

Case No. 11-15248

Honorable Nancy G. Edmunds

    Plaintiffs,

v.

Kevin Clinton, in his capacity as Treasurer
for the State of Michigan, Rick Rodriguez,
an individual, Barbara Weathersbee, an
individual, Michigan State Trooper John
Doe #1, and Michigan State Trooper John
Doe #2,

    Defendants.
_____/

## ORDER GRANTING DEFENDANT CLINTON'S MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF STANDING FOR INJUNCTIVE RELIEF [56]

Currently before the Court is a motion for summary judgment filed by Defendant Kevin Clinton[1], as the Treasurer of the State of Michigan. Treasurer Clinton is seeking summary judgment on the issue of Plaintiff's request for an injunction, arguing that Plaintiffs lack standing and that, even if they have standing, the request for injunctive relief has become moot.

For the reasons set forth below, the Court GRANTS Treasurer Clinton's motion.

---

[1]The Defendants in this case are Kevin Clinton, in his capacity as Treasurer for the State of Michigan, Rick Rodriguez, an individual, Barbara Weathersbee, in individual, Michigan State Trooper John Doe #1, and Michigan State Trooper John Doe #2. To the extent that Plaintiff's claims for injunctive relief are applicable to Mr. Rodriguez and Ms. Weathersbee, Defendant Treasurer Clinton makes the instant motion on their behalf as well.

**I.     FACTS**

This is a class action seeking, among other things, an injunction against the Michigan Treasury's practice of executing tax seizures without a judicially issued warrant. The facts are clear that for many years, the Michigan Treasury conducted seizures to satisfy tax debts without a judicially issued warrant, including entering and searching private areas on business premises in order to effectuate a seizure. Instead of obtaining a warrant for these search and seizure operations, the Michigan Treasury had a process of multi-level, internal review in place, ostensibly to ensure that the correct assets were seized to satisfy a given tax debt. Since the initiation of this lawsuit, the Michigan Treasury has modified its tax seizure process to include the acquisition of a court order authorizing each seizure.

The Michigan Treasury maintains, however, that in order to seize assets from a business, as opposed to a private residence, no such court order is necessarily required to satisfy the Fourth Amendment. Howard Dep. 120:19-25, Sept. 17, 2012. Furthermore, the new process that includes a court order appears to be a draft, which is easily changed, as the one before it was. *Id.* at 115:17-116:19.

The class in this case contains 162 memebers, and in an order issued by this Court on May 14, 2013, was defined as:

> All persons, businesses, or entities who or which have been subjected to nonconsensual, non-judicially approved search and/or seizure of their property carried out by agents or other persons acting on behalf of or at the direction of the Michigan Department of Treasury within the applicable statute of limitations period where such persons failed to secure judicially authorized warrants permitting such search and/or seizure.

Treasurer Clinton is seeking summary judgment solely on the issue of whether Plaintiffs have standing to pursue a claim for injunctive relief.

## II. ANALYSIS

### A. The Standard on Motion for Summary Judgment

The Sixth Circuit employs the familiar standard for summary judgment, namely, that summary judgment is proper when the movant "shows that there is no genuine dispute as to any material fact, and that the movant is entitled to judgment as a matter of law." *U.S. SEC v. Sierra Brokerage Services, Inc.*, 712 F.3d 321, 326-27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)) (quotations omitted). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* Furthermore, the "substantive law will identify which facts are material, and summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

When considering the material facts on the record, a court must bear in mind that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Moreover, "[i]n order to survive a motion for summary judgment, the non-moving party must be able to show 'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy." *Arendale v. City of*

*Memphis*, 519 F.3d 587, 605 (6th Cir. 2008) (citing and quoting *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)).

### B. Article III Standing

#### 1. The Four-Point Analysis for Article III Standing for Injunctive Relief

In order to satisfy the "case or controversy" standing requirement of Article III of the United States Constitution, a party seeking injunctive relief must establish that he or she is: 1- under threat of suffering "injury in fact" that is concrete and particularized; 2- the threat must be actual and imminent, not conjectural or hypothetical; 3- it must be fairly traceable to the challenged action of the defendant, and; 4- it must be likely that a favorable judicial decision will prevent or redress the injury. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

In this case, a strong case can be made for the first, third, and fourth standing requirements. That is, the "injury" here is concrete, it is the unconstitutional seizure of assets. The injury is also traceable to the challenged action, by way of the Treasury's former seizure practices, and it is likely preventable by judicial action, as an injunction would prevent further unconstitutional seizures.

Where Plaintiffs have a problem with their standing is the second prong. Treasurer Clinton argues that "[a]bsent a sufficient likelihood that a plaintiff will again be wronged in a similar way," that plaintiff is not entitled to injunctive relief. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). In response, Plaintiffs argue that *Lyons* is distinguishable, particularly because this case is a class action, and as such, the Court must consider the likelihood of a recurrence of the unlawful actions as to the class as a whole, not just the representative plaintiff. While that is true, it does not relieve the Court of its duty to come

to a decision on the issue of whether or not there is "a sufficient likelihood that a plaintiff will again be wronged in a similar way," it only widens the scope of the analysis to include the entire class.

This prong of the standing analysis is tied closely with the doctrine of mootness and the case law often blurs the line between a direct standing analysis and the mootness analysis. As such, the parties have not pointed to, nor has the Court found a case from the Sixth Circuit that directly addresses the issue of class standing where the threat of injury may not be imminent for the entire class outside the framework of the mootness analysis. The Seventh Circuit, however, has stated outright that "as long as one member of a certified class has a plausible claim to have suffered damages, the requirement of standing is satisfied." *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 676 (7th Cir. 2009). While the *Kohen* language is not controlling, the Court finds it persuasive, as it meshes logically with the mootness doctrine, and to find otherwise would undercut the foundational principles of class action litigation by incentivizing defendants to settle with individual class members in order to destroy the class's standing.

Here, however, the nature of the wrong, together with the definition of the class itself gives the Court pause on this issue. Plaintiff argues that the possibility of a warrantless search of any of the 162 class members is sufficient to create the actual and imminent threat required by Article III. That position, however, requires the Court to assume that at least one of the class will again fall into such tax delinquency as to have their account be approved for a tax seizure for a second time and that the Michigan treasury would resort to its old, extra-judicial tactics in attempting to satisfy the debt. In other words, because injunctive relief is a forward looking remedy, and the class of plaintiffs is defined as people

5

and businesses that have already been subjected to allegedly unconstitutional actions, the forward looking remedy does not necessarily address the injuries of the class, which as a group seems unlikely to suffer the same wrong a second time. A hypothetical example may prove enlightening on this point: if the class was defined to include people or businesses with current, outstanding tax debts, those parties would be under the threat of a potentially unconstitutional seizure, going forward, and would likely satisfy the imminent threat part of this analysis. Contrast that hypothetical class with the actual class, consisting of people who have already had their assets seized to satisfy their tax debts in whole or in part, and the remote likelihood of a second seizure becomes apparent.

Although the *Lyons* case dealt with a single plaintiff, the analogy is apt. The threat of the plaintiff being randomly stopped and choked by the police for a second time in *Lyons* required too many leaps of faith to create standing for injunctive relief. As noted above, here too the threat of one of the class members again having their debt selected for a seizure and that seizure violating the Fourth Amendment requires too many assumptions.

The Court, therefore, finds that the threat to the class of another unconstitutional seizure is so remote that it inhabits the realm of the "conjectural or hypothetical" and as a result, the Plaintiffs do not have standing to seek injunctive relief in this case, and Treasurer Clinton's motion for summary judgment on the issue of standing for injunctice relief is GRANTED.

**2. A mootness analysis is not necessary in light of the Court's finding of no standing for injunctive relief**

In light of the Court's finding that Treasurer Clinton is entitled to summary judgment on the four-point Article III standing analysis, the issue of mootness has itself become moot, and need not be addressed.

### III.   CONCLUSION

For the reasons stated above, the Court GRANTS Defendant Treasurer Kevin Clinton's motion for summary judgment and DISMISSES Plaintiffs' claim for injunctive relief.

SO ORDERED.

s/Nancy G. Edmunds  
Nancy G. Edmunds  
United States District Judge

Dated: April 16, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 16, 2014, by electronic and/or ordinary mail.

s/Carol J. Bethel  
Case Manager