UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Adhid Miri, an individual, The Exchange Inc., A Michigan corporation d/b/a 'Copper Canyon" on behalf of themselves and all other similarly situated persons and entities,

      Plaintiffs,

v.

Kevin Clinton, in his capacity as Treasurer for the State of Michigan, Rick Rodriguez, an individual, Barbara Weathersbee, an individual, Michigan State Trooper John Doe #1, and Michigan State Trooper John Doe #2,

      Defendants.
                                           /

Case No. 11-15248

Honorable Nancy G. Edmunds

## **OPINION AND ORDER GRANTING DEFENDANT RODRIGUEZ'S MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF QUALIFIED IMMUNITY [86]**

Currently before the Court is Defendant Rick Rodriguez's Motion for Summary Judgement on the issue of qualified immunity. For the reasons set forth below, the Court GRANTS Defendant Rodriguez's motion and finds that he is entitled to qualified immunity.

**I.    FACTS**

The facts of this case have been laid out by the Court on several occasions, and a detailed account of all of the facts can be found in the Court's Opinion and Order of May 14, 2013. What follows, therefore, is a brief review of the undisputed facts relevant to the instant motion. Plaintiff Adhid Miri ("Miri") owned and operated Copper Canyon, a restaurant. After falling behind on his state tax obligation for the business, Miri entered into a repayment agreement with the Michigan State Department of the Treasury. After Miri

demonstrated an inability to meet the payment obligations under the repayment agreement, Defendant Rick Rodriguez ("Rodriguez") applied for a tax warrant in order to seize the assets of Copper Canyon in satisfaction of the business's outstanding tax debt.

The procedure for obtaining a tax warrant in place at the time Rodriguez applied for and received the Copper Canyon tax warrant involved five levels of review within the treasury department. At no time in the tax warrant application process was a judge or other neutral magistrate consulted.

At the time of the Copper Canyon asset seizure, Rodriguez had been an employee of the Treasury Department for more than thirty years, and had held the position of warrant officer for approximately twenty years. Rodriguez's actions leading up to and during the Copper Canyon asset seizure were in compliance with the then current Michigan Treasury Department policies and procedures for such seizures.

On January 7, 2010, upon arriving at the Copper Canyon restaurant, Rodriguez had the locks on the building changed, entered the business, and seized all of the assets located in the publicly accessible areas of the restaurant. Rodriguez then demanded and gained access to the private office, the safe and liquor room, all of which are areas of the restaurant that are locked, private, and not accessible to the public.

Before Rodriguez left the premises, Miri filed an emergency bankruptcy application. When presented with the bankruptcy paperwork, Rodriguez returned some, if not all, of the seized assets and gave Miri a copy of the keys to the new locks on the building.

## II.     PROCEDURAL HISTORY

Miri brought this lawsuit on November 29, 2011, seeking damages, injunctive relief, and class certification. The named Defendants included the Michigan State Treasurer in his official capacity (at the time the lawsuit was brought, the Treasurer was Andy Dillon, who has since been succeeded by Kevin Clinton), Rick Rodriguez, in his individual and official capacity, two John Doe Michigan State Troopers, and eventually Barbara Weathersbee, also in her individual and official capacity. The Court granted class certification for liability purposes only. Subsequently, upon Defendants' motion, the Court ruled that the class lacked standing for injunctive relief, decertified the class, and dismissed Plaintiffs' claims calling for an injunction. In so doing, the Court implicitly dismissed the Treasurer from the case, as under long established Constitutional principles - primarily Eleventh Amendment doctrine - such state officials can only be sued in their official capacity for injunctive relief. Plaintiffs then agreed to the dismissal of Ms. Weathersbee from the case. Left with only Rodriguez and the two John Doe Troopers, Defendants move for summary judgment, claiming that Rodriguez is entitled to qualified immunity.

### III. ANALYSIS

#### A. The Standard on Motion for Summary Judgment

The Sixth Circuit employs the familiar standard for summary judgment, namely, that summary judgment is proper when the movant "shows that there is no genuine dispute as to any material fact, and that the movant is entitled to judgment as a matter of law." *U.S. SEC v. Sierra Brokerage Services, Inc.*, 712 F.3d 321, 326-27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)) (quotations omitted). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* Furthermore, the

"substantive law will identify which facts are material, and summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

When considering the material facts on the record, a court must bear in mind that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Moreover, "[i]n order to survive a motion for summary judgment, the non-moving party must be able to show 'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy." *Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008) (citing and quoting *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)).

In this case, in particular on the issue of qualified immunity, the essential facts are not in dispute, and so the following analysis is largely based on the legal issues presented by those facts.

**B. Qualified Immunity**

Rodriguez invokes qualified immunity, and argues that as a governmental actor, he is shielded from liability because the complained of conduct does not violate clearly established statutory or constitutional rights. Rodriguez further argues that even if a constitutional violation occurred, his actions were objectively reasonable and that Plaintiffs cannot show that he was plainly incompetent.

Once qualified immunity is invoked, the burden shifts to the plaintiff to demonstrate that the defense is not applicable. *Smoak v. Hall*, 460 F.3d 768, 778 (6th Cir. 2006). In

4

order to determine whether or not qualified immunity applies in a given case, a court must employ a two-part test, however the reviewing court has discretion to begin its inquiry with either part of the test. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (affirming the substance of the two-part qualified immunity analysis set forth in *Saucier v. Katz*, 533 U.S. 194 (2001), but no longer requiring rigid adherence to the sequence of the analysis indicated by *Saucier.*). Despite Rodriguez's invitation to begin with the second step, the Court will employ the traditional sequence, and first determine whether, based on the applicable law, and in the light most favorable to Plaintiff, the facts show that a constitutional violation has occurred. Then, if the Court determines a violation occurred, the Court will consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known.

> **1. In the light most favorable to Plaintiffs, the evidence establishes that a constitutional violation occurred**

The Fourth Amendment to the United States Constitution provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

In *G. M. Leasing Corp. v. U. S.*, the Supreme Court made clear that in the context of tax seizures, intrusions in to private offices are "governed by the normal Fourth Amendment rule that 'except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by

a valid search warrant.'" 429 U.S. 338, 358 (1977) (quoting *Camara v. Municipal Court*, 387 U.S. 523 (1967)).

The undisputed facts of this case establish that Rodriguez, without a judicially issued search warrant, entered the private areas of the Copper Canyon restaurant to effect a tax seizure. Outside a set of limited exceptions, none of which are implicated in this case, government agents may not enter private spaces without a search warrant issued by a neutral, detached magistrate. *See, e.g., Johnson v. United States*, 333 U.S. 10, 14 (1948) (stating "[w]hen the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent."). Neither party contends that a judicially issued warrant was secured that would have authorized Rodriguez's entry into the private areas of the restaurant. It is an unfortunate confluence of usage that Rodriguez was armed with a tax "warrant" because, as the Supreme Court has established, such a document does not satisfy the Fourth Amendment's warrant requirements.

As there is no dispute regarding the facts of the search, the Court finds that, taken in the light most favorable to Plaintiffs, a constitutional violation occurred, specifically, Rodriguez's search of the private areas of the Copper Canyon restaurant without a valid, judicially issued search warrant constituted a violation of Plaintiffs' Fourth Amendment rights.

Now the Court must determine whether Plaintiffs' rights were clearly established such that a reasonable government agent faced with the same circumstances as Rodriguez would have known of those rights.

6

**2. The specific constitutional violation did involve a clearly established right, but a reasonable person in Rodriguez's circumstances may not have known that his actions violated that right**

In broad strokes, there are few constitutional principles more embedded in our national culture than the one implicated in this case. That being said, the specific violation at issue in this case, whether or not a tax warrant may be issued by the taxing authority itself and still allow a government agent access to a private area without violating the Fourth Amendment, is arguably not a clear cut case. In support of his arguement that in the context of this case the warrant requirement of the Fourth Amendment is not clearly established Rodriguez makes several points.

    a. *G.M. Leasing*

Rodriguez argues that the language of *G. M. Leasing Corp.* leaves open to interpretation the issue of where a warrant must come from in order to satisfy the Fourth Amendment in the context of tax seizures. Such a reading of *G. M. Leasing Corp.*, however, would not only upend over a century of Fourth Amendment jurisprudence, but it would ignore the principles on which the *G. M. Leasing Corp.* decision is based and to which it points. The reader seeking clarification of just what the *G. M. Leasing Corp.* court had in mind when it ruled that tax seizures that intrude into private offices are "governed by the normal Fourth Amendment rule that 'except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant'" must turn to the case that *G. M. Leasing Corp.* quoted for that proposition, namely, *Camara v. Municipal Court*, 387 U.S. 523 (1967). In *Camara*, the Supreme Court, quoting an even older case, noted that "[w]hen the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial

officer, not by a policeman or government enforcement agent." *Camara*, 387 U.S. at 529 (quoting *Johnson*, 333 U.S. at 14).

Following the line of cases on which *G.M. Leasing Corp.* is based, therefore, leads the Court to the conclusion that, absent the presence of one of the established exceptions to the Fourth Amendment's warrant requirement, *G.M. Leasing Corp.* does indeed require that a tax seizure be supported by a judicially issued warrant where that seizure requires entry into private areas.

Flowing directly from the above analysis, the Court turns to Rodriguez's argument regarding the Sixth Circuit's statement that tax seizures "may still be effected without judicial intervention if the property to be seized is found in a public place. But, under *G.M. Leasing*, if it is necessary for the Government to enter private premises to effect the seizure, it must first obtain a court order authorizing such entry." *Matter of Campbell*, 761 F.2d 1181, 1186 (6th Cir. 1985). Rodriguez argues that this is an "imprecise" citation to *G.M. Leasing* that was not essential to the resolution of the matter at hand, and therefore should be considered non-binding dicta. In light of the foregoing analysis of the reasoning in *G.M. Leasing*, the Court agrees with the Sixth Circuit's statement in *Matter of Campbell*, which as demonstrated above, is in no way imprecise. However, as Rodriguez correctly points out, the *Campbell* language was not essential to the holding in that case, and therefore cannot be considered a binding declaration of the law in the Sixth Circuit.

Although the Court is of the opinion that, as described above, a judicially issued warrant is indeed required to effectuate a tax seizure on private premises, the undertaking of the above analysis is not necessarily to be expected of a person in Rodriguez's position. It is, however, expected of the Treasury Department's legal office.

### b. *Bollini*

*Bollini v. Bolden*, 08-14608, 2010 WL 1494562 (E.D. Mich. Apr. 14, 2010), a case with strikingly similar facts, was issued by a sister court in this district shortly after the seizure in this case took place. Rodriguez argues that because the *Bollini* decision was issued after the seizure in this case took place, the Court should not consider it when determining whether or not the right at issue was clearly established at the time of the seizure. While it is true that the *Bollini* decision was issued after the events that took place in this case transpired, the court in *Bollini* declined to extend the benefits of qualified immunity to the warrant officer in that case based on the settled law at the time of the seizure at issue. Apparently, however, the arguments raised by Rodriguez regarding his belief in the validity of the tax warrant and the Constitutional difference between a warrant issued by the Treasury executive and one issued by a judge or other neutral magistrate were not raised in the *Bollini* case and therefore did not inform the decision therein. Rodriguez's arguments on this point highlight a layer of complexity in this particular subset of Fourth Amendment jurisprudence that works in Rodriguez's favor.

### d. The Indiana and Washington State Supreme Court opinions

Rodriguez points to two state supreme court cases, one from Washington, and the other from Indiana, for the proposition that in some instances a tax warrant issued by the treasury executive satisfies the Fourth Amendment. What is not explicitly stated in those cases, however, is that while so-called "executive warrants" or "tax warrants" were issued in both of those cases and found to be sufficient for Fourth Amendment purposes, in fact, it is extremely likely that no warrant would have been necessary at all to constitutionally effectuate the seizures discussed in those cases.

Specifically, in *Adams v. State*, the Indiana Supreme Court addressed two tax warrants available under state law: the first type of warrant - the jeopardy warrant - is authorized by what is essentially a statutory codification of the exigent circumstances exception to the Fourth Amendment's warrant requirements, and; the second type of warrant - the CSET warrant, which was the warrant at issue in *Adams* - which bootstraps itself onto the first, without any real showing of exigence. 762 N.E.2d 737, 743-45 (Ind. 2002). The *Adams* court deemed a search under the CSET warrant to be unreasonable under the Fourth Amendment. Rodriguez, however, relies on this case for the *Adams* court's approval of the jeopardy warrant. That approval is based on the fact that the jeopardy warrant, as the name implies, requires circumstances that would likely fall within the already recognized exigent circumstances exception to the Fourth Amendment's warrant requirement and therefore, a warrantless seizure of assets subject to an Indiana jeopardy warrant would likely not violate the Fourth Amendment; the statutory framework that Indiana has put in place adds a commendable level of procedural protections, but it does not constitutionalize an act that is, in all likelihood, constitutional to begin with. *Id.* There were no exigent circumstances in this case. In fact, Rodriguez had effectively seized the entire building by changing the exterior locks, and so there was very little possibility that Plaintiffs would have been able to secret away any of the assets found in the private areas of the restaurant after the initial seizure took place.

In *Peters v. Sjoholm*, the Washintgon Supreme Court dealt with what was essentially a warrantless seizure of a bank account. 631 P.2d 937, 939-41 (Wash. 1981). Bank accounts, not being physically located in a private area of an individual's home or business, have elicited a variety of treatments by courts over the years, often not receiving the same

stringent Fourth Amendment warrant protections as have, say, safes located in the back offices of restaurants. *Id.* Indeed, the Sixth Circuit has held that tax seizures of assets residing in an account do not involve the type of physical intrusion that implicates the Fourth Amendment. *Sachs v. U.S. ex rel. I.R.S.*, 59 F. App'x 116, 119 (6th Cir. 2003). This case undisputably involves a physical intrusion, and in light of that, the applicability of *Peters* to this case is negligible. If Rodriguez is arguing that *Peters* stands for the proposition that tax warrants are an adequate substitute for judicially issued warrants in all circumstances, the Court disagrees, as such a reading would be contrary to *G.M. Leasing*, which the *Peters* court cited to repeatedly.

These issues notwithstanding, the mere fact of having to engage in the foregoing discussion suggests that a reasonable person in Rodriguez's position may very well not have understood the technical difference between a judicially issued warrant and a so-called executive warrant under the specific circumstances of this case, particularly where, as here, the government agent, though experienced, is of low rank and merely follows the procedures laid out by his superiors. *See Saad v. Keller*, 546 F. App'x 552, 559 (6th Cir. 2013) (granting qualified immunity to junior officers where qualified immunity was denied to more senior officers).

The Court therefore finds that Rodriguez is entitled to qualified immunity because while the Fourth Amendment requirement that a tax seizure on private premises must be supported by a judicially issued warrant is clearly established, there is enough ambiguity in the process to cloud it to the point that a reasonable government agent in Rodriguez's specific circumstances may not have known that his executive warrant was not sufficient under the U.S. Constitution, and Plaintiff has not shown otherwise.

### III.   CONCLUSION

For the reasons set forth above, the Court finds that Defendant Rick Rodriguez is entitled to qualified immunity, and therefore GRANTS his motion for summary judgment on that issue.

As Rodriguez was that last defendant against whom any relief may have been granted, the Court's resolution of this motion effectively ends this cause of action, and therefore, Plaintiff's case is hereby DISMISSED with prejudice.

SO ORDERED.

s/Nancy G. Edmunds  
Nancy G. Edmunds  
United States District Judge

Dated:  July 30, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 30, 2014, by electronic and/or ordinary mail.

s/Carol J. Bethel  
Case Manager